# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 2, 1897.

SUPREME LODGE, IMPROVED ORDER B'NAI B'RITH,

VS.

BUNE KOCH, LEAH SELUBSKY, CHAIE DINAH LAPIN, ET AL.

*Julius H. Wyman* for petitioner.

*T. J. Schaumloeffel* and *B. H. Hartogensis* for Leah Selubsky.

*Jacob J. H. Mitnick* for Jacob Harris, executor, and C. D. Lapin.

*Emil Budnitz* for Bune Koch.

STOCKBRIDGE, J.—

The bill in this case was filed by the Supreme Lodge of the Improved Order of B'nai B'rith as a bill of interpleader, and, among other matters, sets out the following facts:

Moses Koch was a member of the order at the time of his death, and as such, there had been issued by the order a certificate in which his wife, Bune Koch, was named as beneficiary, for the sum of $1,000. Mr. Koch, by his last will, executed shortly before his death, had attempted to change this by providing "that as to all sums of money payable on my death by any lodge or order, my said wife shall receive one-half of the same, and the remaining one-half shall go to the persons hereinafter designated to take the residue of the remaining two-thirds of my estate (one-third having been previously devised to his wife), the same as if said remaining one-half formed part of said residue." Then follows the residuary clause, containing a number of devises of specific sums to individuals and societies, and then the ultimate residuary legatees are named as his two sisters, Leah Selubsky and Chaie Dinah Lapin, in the proportions of three-sevenths and four-sevenths, respectively.

Upon his death claims were made upon the order upon the part of his widow as the beneficiary named in the certificate, and on behalf of his sisters as the devisees named in his will, and there being these conflicting claims the bill of interpleader was filed, and the money brought into Court by the order that it might be protected, and the parties required to litigate their respective claims inter sese in this Court.

At the trial of the cause it was further set up on behalf of the sisters of the deceased that Moses Koch had endeavored during his life time to have the beneficiary in his certificate changed; and the names of his sisters inserted therein, but that this had been prevented by the wrongful act of some of the officers of the order, and that therefore it was to be treated in equity as though such change had actually been made in the certificate, and the money which has been deposited in Court ordered to be paid to the sisters, one-half of the amount having already been paid to the widow.

The first question for determination therefore, is whether or not the sum stipulated to be paid in a case like the one under consideration is a subject matter of disposition by will. The character of an interest in a benefit certificate like this has often been passed upon by the Courts, and it has been defined as a power of appointment. As it was expressed in one case "the testator did not have any interest in the future fund, he simply had a power of appointment, authority to designate the ultimate beneficiary, and that power and authority died with him because it could only be exercised by him and prior to his death. If he had not so exercised it, nobody surviving or representing him could and upon his death, he would have nothing which would descend or upon which a will could operate. His contract effected that result—He agreed that the endowment to be collected should be paid, not to his next of kin, not to the legatee named in his will, but to the person designated to his Lodge."

Hellenberg vs. I. O. of B'nai B'rith, 94 N. Y. 585, that is to the person named in the benefit certificate. And to the same effect see

Md. Mutual Benefit So. of Red Men vs. Clendenen, 44 Md. 433.

Bacon on Benefit Societies, Sec. 237.

The interest of a member in such an order is not property which passes to the administrator or executor, or which can be reached by creditors of a deceased, and in the absence of a clear and definite power of making the appointment by the will given by the charter of By-laws of the organization, is not property which can be disposed of by will. Many of the cases cited to sustain the proposition that the sisters of Mr. Koch were entitled to the fund now in Court by virtue of the terms of his will were cases originating in connection with orders where unlimited power of disposition by will was given in the charter or by-laws of the society, and, therefore, these cases are without application in this case, unless there is a like unlimited power of testamentary appointment contained in the charter or laws of this order. Turning then to these we find the following condition: the charter is silent, but there is a certain power of appointment by will given by Section 13 of Article Fourteen of the by-laws, which reads as follows:

"Sec. 13. The said sum of $1,000 shall be paid to the widow and children of a deceased brother in equal parts of $500; providing the brother makes a will to that effect; and in the event of no will, the full amount shall be paid to the widow, or, if there be no widow, to his legal heirs."

Some argument was had by the counsel as to the meaning of this section, but its meaning seems perfectly clear to the Court, and that without the reading in to the section of a single word. The right of testamentary appointment being one dependent on the laws of the order and not existing without it, this section gives a limited power of such appointment only; it is not a general power, as in the case of many societies, but a very restricted one, applicable to only certain conditions of the family, and the concluding portion of the section provides for the case of intestacy.

It is a conceded fact in this case that Mr. Koch had a wife, but no children, and therefore he was not in the class who could under the laws of the order exercise the power of a testamentary appointment, and must as to this fund stand in the same position that he would had he died intestate. But it has been strongly urged that this section of the by-laws if given this construction is void, because in conflict with the charter, which specifies as the object of the incorporation that it is for the purpose of "providing an endowment for the *heirs* of" a deceased member, and that because in a strict sense a wife is not an heir that therefore any limitation which makes is possible for a member to make his wife the sole beneficiary of his benefit certificate is in conflict with the charter and void.

The Court cannot recognize so narrow a view. To do so would be but a step towards excluding from the position of beneficiaries the wives of all the members of this order, the very persons more than any others whom it is natural should be the objects of the foresight and provision of its members, and no such construction should be given if it is possible to avoid it; and, as has been said by Mr. Bacon in his Treatise on Benefit Societies, Section 260, "in construing the word heirs the intent will also be considered, and if there is a plain demonstration that the word was used in any other than the strict legal sense a liberal interpretation will be given it."

The same principle of construction has been adopted in numerous cases.

See Am. Legion of Honor vs. Perry, 140 Mass. 580; Elsey vs. Odd Fellows, 142 Mass. 224.

2. There remains for consideration the question of the right of Mr. Koch's sisters to the fund as consequent upon his act in making a change of the beneficiary from that named in the certificate. There can be no question under the charter and by-laws of the right of a member of the society to change the beneficiary. Such power is one of the most fundamental ones of all such societies, and it is specifically recognized, and the mode of doing it prescribed in the by-laws of this order. As a matter of fact, the certificate was not changed in this case, but the contention in behalf of Mrs. Selubsky and Mrs. Lapin is that the request for the change was made of the officers of the order, both of Ezra Lodge, to which he belonged, and of the supreme secretary, and that Mr. Harris, who made the application on behalf of Mr. Koch, was told that such alteration could not be made in the Order of B'nai B'rith, and therefore, upon the principle laid down in Pinckney vs. Dambmann, 72 Md., and elsewhere, that the law does not

require to be performed that which if done would be nugatory, all was done which was necessary to make the change effectual in equity.

It is true that equity will sometimes interfere to remedy a defective or partially completed execution of a power, but the case must be very clear and no opposing equity must exist.

Bacon on Benefit Societies, Sec. 241.

1 Story, Equity Jurisdiction, Sec. 181, 182.

The testimony upon this branch of the case is not entirely free from conflict. The witness Harris, testified positively that he made the request for the change of the beneficiary at the instance of Mr. Koch, first of Dr. Shirman, an officer of Ezra Lodge, who promised to make such a change in the order of the Sons of Benjamin, but was in doubt whether it could be done in the B'nai B'rith, next of a Mr. Ball, who first promised to attend to it and then sent him to the Supreme Secretary, and that the request was then made of Mr. Brown, the Supreme Secretary of the B'nai B'rith, who told him that no such change could be made.

Mr. Ball on the stand denied the promise to attend to it or have it done, as testified to by Harris. Mr. Brown testified to the conversation between him and Harris, as being an inquiry as to whether it could be done, and Dr. Shirman testified as to his interview with Harris as being chiefly a message that Mr. Koch wanted to see him to "make a will" in the Sons of Benjamin, though his testimony of his remark to Mr. Lundon that he did not know whether such change could be made in the Order of B'nai B'rith would seem to indicate that the request for a change in the beneficiary of the certificate had also been made of him by Mr. Harris. Dr. Shirman saw Mr. Koch on the 7th October. 1895, when he witnessed his will in the Sons of Benjamin. but he did not testify to any expression by Mr. Koch of a desire to change the beneficiary in the order of B'nai B'rith.

The certificate has apparently been lost, it might have been so at the time of the request made by Mr. Harris, so that a strict compliance with the by-laws would have been impossible, since the certificate issued could not have been surrendered, with the endorsement as provided in the by-laws.

There was never presented to the officers of the B'nai B'rith any order or request signed by Mr. Koch requesting such a change, nor is there any testimony that he ever signed any paper to that effect. Such an act upon his part it can hardly be assumed would have been nugatory. He had a copy of the by-laws. If a change was desired it should have been put in such form that his wish was entirely clear, as was done in the Sons of Benjamin. The statement made by the officers of the order to Mr. Harris, could not relieve Mr. Koch of at least himself presenting a formal demand, which he did not do, nor even did he make an informal one of Dr. Shirman on October 7th.

To say that this was sufficient would be to say that an order like the B'nai B'rith would be compellable to change the beneficiary in a certificate issued by it upon the verbal statement of a third person that a member of the order desired it; and that would bring about a condition that would inevitably wreck any such organization.

The Court therefore can not find that Mr. Koch had used such measures as were imperative upon him to effectuate a change in the beneficiary named in the certificate issued by the Order of the B'nai B'rith, and a decree will be signed directing that after deducting the costs of the proceeding from the fund now in Court the balance be paid over to Bune Koch, widow of Moses Koch, the beneficiary named in the certificate.