(Decided 10th March, 1876.)

---

THE MARYLAND MUTUAL BENEVOLENT SOCIETY OF THE IMPROVED ORDER OF RED MEN OF THE STATE OF MARYLAND *vs.* THOMAS R. CLENDINEN, Administrator, c. t. a. of FERDINAND STANSBURY.

*Construction of the Charter of an incorporated Benevolent Society— What are not Assets—Powers—Question of the Exercise of a Power by Will.*

A testator by his will bequeathed as follows: "After the payment of all my just debts, and funeral expenses by my executor out of my estate, I devise as follows: I give and bequeath the entire residue of my estate to my three sisters, E. C. A., M. F. S. and G. R., and my esteemed friend M. V. L., each of them to have and receive a fourth part thereof absolutely." The testator left neither widow nor children, and at the time of his death was a member in good standing of an incorporated benevolent Society, which by its constitution provided, upon the death of any member, for the payment of a fixed sum "to the widow, child, children, or such person or persons to whom the deceased may have disposed of the same by will or assignment. If there be no widow, child or children, or the deceased shall have made no disposition by will or assignment of the sum accruing upon his death, then the board shall appropriate such sum as may be necessary for funeral expenses, and all excess of money accruing from the death of such member, shall go to the permanent fund of the association." HELD:

1st. That the fund assigned by this charter to the widow and children of the deceased, or his legatee or assignee, was not assets, recoverable by his administrator or executor.

Md. Mut. Ben't So'ty of Red Men *vs.* Clendinen, Adm'r, c. t. a.

2nd. That the *jus disponendi* given by the charter was a mere power.

3rd. That the will of the testator was not a valid exercise of the power, the intention to exercise it, not being expressed, and it not appearing that there was no other estate upon which it might operate.

4th. That in the absence of a valid exercise of the power, there being no widow, child or children, of the deceased, the excess of the fund, after paying funeral expenses, should go to the permanent fund of the association.

APPEAL from the Baltimore City Court.

The case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER, ALVEY and ROBINSON, J.

*Luther M. Reynolds,* for the appellant.

*Thomas R. Clendinen,* for the appellee.

BOWIE, J., delivered the opinion of the Court.

The appellants are an incorporated Benevolent Society, organized "with a view to aid the families of deceased members," and "to secure to the widow, child, or children of deceased members, the sum of one dollar from each member of the association." *Charter, Article* 1. The appellee, is the administrator, with the will annexed, of Ferdinand Stansbury, a deceased member of the Society, who sued the appellants in Baltimore City Court, at May term, 1875, and claimed that his testator was a member in good standing, of the appellants' Society, and died about February, 1875, that upon his death, the sum of $280 became payable to such persons to whom he may have disposed of the same, by will or assignment, under Article 7 of its by-laws; that said Stansbury left a will devising his entire estate to four persons named, his three sisters and his friend Lowenbach, and that plaintiff was

duly appointed administrator *c. t. a.*, and thereby became entitled to receive every thing which belonged to F. Stansbury's estate, or could pass by his will, including the sum of $280, so as above devised ; that the plaintiff had demanded payment of the appellants, and complied with all its regulations upon the subject, but the appellants had refused. The defendants pleaded *non assumpsit*, the case was submitted to the Court upon an agreed statement of facts.

The plaintiff contended upon these facts, that by a proper legal construction of the charter of the appellants, (a copy of which was in evidence,) the verdict should be for the plaintiff; whilst the defendants maintained that the money did not pass by the will. The Court decided that the fund or money did pass by the will, to which the defendants excepted, and the judgment being for the plaintiff, the defendants appealed.

At the trial of the cause, it was admitted "that the plaintiff had the right to bring the suit as it was brought (meaning, as was conceded in argument, he was administrator of said Stansbury ;) that the defendants were duly incorporated ; that Stansbury died leaving neither widow nor children, and was at the time of his death a member of the corporation in good standing, and that there were then 276 other members of the corporation. It was further admitted that the following is a true extract from the will of Ferdinand Stansbury, dated the 8th February, 1875, viz., "After the payment of all just debts and funeral expenses by my executor, out of my estate, I devise as follows : I give and bequeath the entire residue of my estate to my three sisters, Emma C. Arnold, Mary Florence Skinner and Grace Rose, and my esteemed friend Mary E. V. Lowenbach, each of them to have and receive a fourth part thereof absolutely ;" and that the annexed constitution and by-laws, are the rules and articles by which the defendants are governed.

The plaintiff read the first and second sections of Art., 7, as follows:

Sec. 1. Upon the death of a member of the association, the President shall draw his order upon the treasurer, (countersigned by the secretary,) within sixty days after receiving proper notice of the same, for the sum of one dollar for every member of the association, whose name may be on the books at the time of the death of the member, and the treasurer shall forthwith pay the sum so called for, to the widow, child, children, or such person or persons to whom the deceased may have disposed of the same by will or assignment.

Sec. 2. If there be no widow, child, or children, or the deceased shall have made no disposition by will or assignment of the sum accruing upon his death, then the Board shall appropriate such sum as may be necessary for funeral expenses, and all excess of money accruing from the death of such member shall go to the permanent fund of the association.

Articles 10 and 11 define what constitutes the permanent fund, and its final disposition. By the former, the permanent fund shall consist of entrance fees, reinstatements, amount left over according to 2nd section, Article 7, and interest.

By the latter, if the association should be reduced to 250 members, two-thirds of the Board of Managers may settle up its affairs, pay its debts, (if any,) and the balance of *the principal and interest of the permanent fund* be divided amongst the members whose names are recorded on the books of the association. The question is, whether the fund assigned by this charter to the widow and children of the deceased, or to his legatee or assignee, becomes upon his death, assets, which will pass to his administrator or executor, under a general residuary clause of a will, not referring to the power, or the fund.

This charter is a contract or covenant between its several members with each other, and the corporation

created by it, to reciprocally perform its several stipulations and obligations.

Each member binds himself to pay a stipulated entrance fee, and a certain sum upon the death of any of his associates, within a given time, upon notice; and on the other hand, upon the death of any member, the corporation, by its president, is required to pay a sum of one dollar for each surviving member, to the widow, child, children or legatee or assignee of the deceased. Whether this charter invests the member with an interest or property, in the sum to be paid over to his widow, legatee or devisee, or only with a power of disposing of the same, is first to be determined.

2nd. If the charter only entitles the member to a power, has that power been exercised or not?

"A power is defined to be a *liberty* or *authority* reserved by, or limited to, a party to dispose of real or personal property for his own benefit, or for the benefit of others, and operating upon an estate or interest, vested either in himself or in some other person; the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly or partially." *Butler, note* 1, *to Co. Litt'n*, 342 *b;* 1 *Chance on Powers, sec.* 1. Again, "That a person having a power over property has not, in strictness, any interest in, or right or title to, the property to which the power relates, appears in early authorities;" (*Albany's Case*, 1 *Rep.*, 110 *b; Lampet's Case*, 10 *Rep.*, 48 *b; Co. Lit.*, 265 *b;*) "though where the power is for his own benefit, he has the means of acquiring such interest, right or title; and in all cases, by the execution of the power, the possession, right, title or interest is altered or divested." *Ibid, sec.* 2.

The interest acquired by a member of this association is not one payable to himself, or for his own benefit, further than his funeral expenses.

It is not a *"debitum in presenti, solvendum in futuro;"* if the deceased had only a power, and not an interest or property in the sum or fund, it was not assets.

In 2 *Chance on Powers*, sec. 1820, it is said: "That an ordinary power is not in itself assets, is clear, from all the cases."

This cannot be classed among the assets to be returned by an administrator in his inventory; it is not "*a chose in action,*" or any species of personal property.

We know of no case in which the "*jus disponendi*" authorized by charters, under provisions like the present, has been declared a mere power; but powers arise at common law, under bonds to convey estates as another shall appoint, or to pay sums of money, as another shall appoint, either generally, or among children, or under covenants for like purposes. 3 *Atk.*, 656; 1 *Ves., Sen.*, 86; *Cro. Car.*, 219, 376, and other cases cited in 1 *Chance on Powers.*

We cannot see why an authority or privilege acquired under a charter, to be exercised for the benefit of another, should not be governed by the same rules.

To make such funds subject to administration, under our testamentary system, would be a total subversion of the objects of the corporation, and a violation of the contract between the corporators.

The second question arising on the bill of exceptions is, whether the will, under which the appellee claims, operates as a valid execution of the power?

This question was very fully examined and discussed in the case of *Mory, Exc'x of Michael vs. Michael*, 18 *Md.*, 241.. There the power was created by a marriage contract, giving the wife authority to devise and bequeath the sum of money, "as if she were a *féme sole;*" we cannot better express the law on this point, than in the language of the Court in that case, viz., "The question submitted is, therefore, limited to the operation of the will, as an ap-

pointment within the terms of the contract, upon the principal sum assigned by it to the appellee. The execution of a power of appointment by will must be intended, and *the intention must be clearly manifested.* The rule of construction by which such an intention may be ascertained, is explicit and exhaustive, and may be thus concisely stated :—The intention to execute a power of appointment by will, must appear by *a reference in the will to the power,* or *to the subject* of it, or from the fact that the will would be inoperative without the aid of the power. *Sug. on Powers,* 301, 303 ; 4 *Kent's Com.,* 385 ; 1 *Story's C. C. Rep.,* 427. In this case the will affords no evidence of a design to execute the power by either of the modes designated in this rule. It neither refers to the power nor to the sum of money which was the subject of it, nor is it inoperative for want of property to give it effect as a testamentary act."

In the case now under consideration, there is no evidence to show that the testator had or had not other estate, on which his will might operate ; so that no inference can arise, from the want of other property, in favor of the supposed appointment. The other *indicia* of the absence of intention to exercise the power, exist in full force ; there is no reference to the power or the subject-matter on which it was to act.

Our conclusion, from these premises, is, that the fund sued for was not assets, recoverable by an administrator, *cum test. annexo,* or executor, and that the will of the deceased was not a valid execution of the power ; in the absence of which, and of an assignment, there being no widow, child or children, after paying the funeral expenses the excess shall go to the permanent fund of the association.

*Judgment reversed.*

(Decided 10th March, 1876.)

STEWART, J., dissented.