[No. 3633.]

LOVE v. CLUNE.

1. INSURANCE—CHANGE OF BENEFICIARY.

Unless the power to change the beneficiary under a policy issued by a mutual benefit association is expressly given, either by the policy or by the articles or by-laws of the association, the beneficiary acquires, upon the issuance and delivery of the policy a vested and irrevocable interest therein.

2. SAME.

The rules and regulations of a mutual benevolent insurance association are not to be construed, so as to defeat the purposes for which the order was organized, unless their meaning is so clear as to admit of no other reasonable construction.

3. SAME.

The provisions contained in the articles of incorporation, by-laws, etc., of The Locomotive Engineers Mutual Life & Accident Insurance Association are considered, and it is *held* that a member cannot appoint as a beneficiary one not within the classes specified as being entitled to its benefits.

*Appeal from the District Court of Arapahoe County.*

Mr. O. F. INGRAHAM and Messrs. TALBOT, DENNISON & WADLEY, for appellant.

Messrs. PATTERSON, RICHARDSON & HAWKINS, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

This action is brought to determine the right to $3,000 paid into court, being the proceeds of two policies of insurance upon the life of one John B. Blocker. On August 21, 1894, John B. Blocker, a member of the Brotherhood of Locomotive Engineers, was killed in a railroad accident, while in the discharge of his duty. At the time of his death there were outstanding two policies of insurance upon his life for $1,500 each, issued by The Locomotive Engineers Mutual Life & Accident Insurance Association. The appel-

lant and appellee both claiming the insurance, the association paid the money into court, to abide the result of this suit.

The facts disclosed by the record which are necessary to be considered in determining which of these claimants is entitled to the fund in controversy, are in brief as follows:

In August, 1863, there was organized an association known as and called "The Brotherhood of the Footboard." In August, 1864, this association was reorganized and its name changed to that of "The Grand Inter-National Brotherhood of Locomotive Engineers," the objects and purposes of which organization, as set forth in its constitution, were to protect and assist the families of deceased members. The organization, which has its principal place of business, or home office, in the city of Cleveland, Ohio, consists of local lodges of locomotive engineers throughout the United States, upon which devolves the duty of protecting and assisting the families of their deceased members. In 1867, for the evident purpose of relieving local lodges from this burden, an insurance branch was instituted in connection with, and under the control of, the brotherhood; and as one of the conditions of becoming a member of the brotherhood, each applicant was required to take out and carry one or more policies of insurance in such association. The following by-laws were adopted for the guidance and control of the insurance association:

"Article I. This association shall be designated 'The Locomotive Engineers Mutual Life Insurance Association,' its object being to aid and benefit the families of deceased members of the Brotherhood in a simple and substantial manner."

"Article XX. When the death of a member of this association occurs, or injuries are received as specified in article XIX, the Secretary of the division shall transmit to the President and General Secretary a report of such death or injury, signed by two members of the Insurance Association in good standing, together with his policy and the certificate of a physician or coroner, stating age, cause of death or injury. He shall also give the name and residence of the *widow*

*or heirs of the deceased, to whom his insurance is payable.*
Upon receiving this information, the President and General
Secretary shall issue a notice through the Journal to all the
division Secretaries, stating the age and date of admission,
and date and cause of death, or injury sustained ; also name
of parties to whom his insurance is payable, and order an
assessment ; " etc.

"Article XXI. Any member failing to pay an assessment
when ordered, as provided in the by-laws, or within the pre-
scribed time, shall forfeit his membership, and shall forfeit
all right and title he or his heirs may have to any benefit or
claim in or against this association.

"Article XXII. The Treasurer of each division shall give
each member a dated and numbered receipt for each assess-
ment as it is paid, or give credit on the books, or both ; such
receipt or book credit shall be sufficient evidence of the good
standing of the member and entitle him or his heirs to the
full benefits.

"Article XXIII. In all cases where members of the asso-
ciation are unable to pay the assessments levied, and are
carried, or the same paid by the division, the number of
brothers being so carried by any division shall be reported to
the President and Secretary, and they shall deduct from the
money due the widow upon the death of the insured, and
pay the subdivision the amount due them, said amount to be
certified to by the C. E. and F. A. E. of each division."

On February 22, 1894, under and in pursuance of the laws
of the state of Ohio, the officers of the brotherhood filed
articles of incorporation for the insurance association, wherein
the name of the association was changed to that of "The
Locomotive Engineers Mutual Life & Accident Insurance
Association ; " and wherein the purposes and objects of the
association were stated in the language of the statute under
which it was organized, as follows :

" *Third.* The purpose for which said corporation is formed
is to transact the business of life and accident insurance on
the assessment plan, for the purpose of mutual protection
and relief of its members, and for the payment of stipulated

sums of money to the families, heirs, executors, or assigns of deceased members of said association."

On March 3, 1894, the incorporators adopted by-laws substantially like the old ones we have quoted, except section 1, which was changed to read as follows:

"This association shall be designated 'The Locomotive Engineers Mutual Life and Accident Insurance Association,' its object being to transact the business of life and accident insurance on the assessment plan, for the purpose of mutual protection and relief of its members, and for the payment of stipulated sums of money to the families, heirs, executors, administrators or assigns of deceased members of said association."

On October 1, 1892, Blocker became a member of the brotherhood, and applied for and had issued two insurance policies, for $1,500 each, in which he designated Mary E. Clune his mother, as the beneficiary, and delivered the same to her. After the incorporation of the association, and some time between March 1 and May 1, 1894, at his request, these certificates were returned to him, whereupon he procured them to be canceled, without her knowledge or consent, and had issued in lieu thereof two policies for the same amounts, wherein the appellant, Mary Margaret Love, was named as beneficiary, which certificates bore the same date as the original policies, and are in the following form:

"Organized December 3, 1867.

"(Incorporated March 1, 1894.)

"LOCOMOTIVE ENGINEERS MUTUAL LIFE AND ACCIDENT
INSURANCE ASSOCIATION.

"Certificate of Membership and Policy of Life Insurance.
"No. 5554.

"This certifies that John B. Blocker was admitted a member of this association this 1st day of October, 1892.

"A. B. YOUNGSON,
"President.
"HARRY C. HAYS,
"General Secretary and Treasurer.

" CLEVELAND, OHIO, October 8, 1892.

" All payments or benefits that may accrue or become due to the heirs of the person insured by virtue of this policy will be payable to Mary Margaret Love or his lawful heirs.

" Which cannot exceed the amount the association shall be able to pay from one assessment.

" Any member of this association neglecting or refusing to pay any assessment when ordered, as provided in the by-laws, or being expelled one year from the Brotherhood of Locomotive Engineers, shall forfeit all right and title to membership, and be debarred from further participation in this insurance or benefits arising from the same.

" For the benefit of the Brotherhood of Locomotive Engineers."

During his lifetime Blocker contributed to the support of his mother, who is also his sole surviving heir at law. She predicates her right to the fund in controversy first, on the ground that the delivery to, and acceptance by, her of the policies in 1892 gave her a vested interest in them, which could not be divested without her consent; second, that under the constitution and by-laws of the association, it is authorized to insure the lives of its members only for the benefit of the families and heirs of such members; and the designation of appellant as beneficiary was inoperative, since she belonged to neither class; and plaintiff, as sole heir of deceased, and also a member of his family, is entitled to the fund. The appellant controverts both of these propositions, and claims the money as the beneficiary named in the foregoing policies.

Upon the question whether the member insured in a mutual benefit association, may, at his pleasure, change the beneficiary designated in the policy, where the laws of the association, as in this case are silent upon the subject, there exists much diversity of opinion among the decided cases; some holding that in the absence of an express or implied restriction the insured may revoke the designation of the beneficiary and

appoint whom he chooses as the recipient of the benefit. To this effect, among others, are *The Masonic Benevolent Ass'n v. Bunch*, 109 Mo. 560 ; *The Masonic M. B. Society v. Burkhart*, 110 Ind. 189 ; *Martin v. Stubbings*, 126 Ill. 387.

On the contrary it has been held that unless the power to change the beneficiary is expressly given, either by the policy itself or by the articles of the association or by-laws of the society, there is no difference in this regard between a policy issued by such association and one issued by an ordinary life insurance company ; and the beneficiary, upon the issuance and delivery of the policy, acquires a vested interest that is irrevocable. *Block v. Valley Mutual Ins. Assn.*, 52 Ark. 201 ; *Johnson v. Hall*, 55 Ark. 210 ; *Weisert v. Muehl*, 81 Ky. 336 ; *Van Bibber's Adm'r v. Van Bibber*, 82 Ky. 347 ; *Manning v. A. O. U. W.*, 86 Ky. 136.

In *Weisert v. Muehl*, *supra*, the court say :

"In our opinion, there is no such difference between an ordinary life insurance company and mutual benefit associations like the one under consideration, as would restrict the operation of the rule just mentioned to the former, and not extend and apply it to the latter class of life insurance companies. The certificate issued in this case is in substance a policy of insurance, and a contract between the company issuing and the person receiving it. Unless, therefore, the charter of the National Mutual Benefit Association makes a distinction, the policy here must be treated like those issued by other life insurance companies."

And in *Block v. Valley Mutual Ins. Assn.*, *supra*, it is said :

"That the member of a mutual benefit society may change the beneficiary named in the certificate has been frequently held ; not, however, because of the character of the society, but because of the stipulation contained in the certificate expressly authorizing it. In most cases such certificates as have been the subject of judicial discussion, contained express stipulation that the beneficiary named might be changed ; in others, the articles of association or by-laws contain such provisions and are by the terms of the policy made a part of

it. The effect in each case is the same. * * * The insured had no interest to assign. * * * He had no power of substitution, because none is reserved in the contract, or in the charter or by-laws of the association, incorporated into the policy."

Upon examination of the numerous cases cited, wherein the general doctrine is announced that the beneficiaries acquire no vested interest in policies issued by mutual benefit associations until the death of the insured, and may be changed at any time the latter may elect, we find that such change was expressly authorized by the policy under consideration, or by the laws of the association issuing it; and among those passing directly upon the question before us, we think the greater number and better reasoned cases favor the rule that in the absence of any provision upon the subject, the beneficiary named cannot be displaced without his or her consent. And that there is no inherent difference between mutual benefit associations and ordinary life insurance companies in regard to the right to change the beneficiary; and the reason why a different rule so often obtains is because of the fact that such right is more frequently conferred by the contract, or authorized by the rules of the society. But, however this may be, we think the change of beneficiaries, as attempted in this case, was inoperative for the further reason that the appellant is not within the class for whose benefit the association was organized.

That the insurance branch of the order was instituted to perform the duty that originally devolved upon the local lodges, and to relieve them from the burden of supporting the families and heirs of deceased members of the brotherhood, is evident from the fact that it was made compulsory for the members of the brotherhood to take out certificates of insurance, as a condition of membership, and from the tenor and effect of its by-laws. Article I declares its object is "to aid and benefit the families of deceased members of the brotherhood in a simple and substantial manner." And repeated reference is made in other provisions to the widows

and heirs of deceased members as the class to be benefited. It is admitted that as originally organized, The Locomotive Engineers Mutual Life Insurance Association prescribed a class restriction as to those who might be designated as beneficiaries by the member insured; and that the appellant, not belonging to that class, being neither an heir of the deceased nor a member of his family, would be precluded from its benefits. But it is contended that when it became incorporated as The Locomotive Engineers Mutual Life & Accident Insurance Association in 1894, it enlarged its purposes, objects, and the class of its beneficiaries, so as to include others than the heirs and families of deceased members, thereby abolishing all class restriction as to beneficiaries.

If this contention shall prevail, it is very evident that the primary object for which the insurance branch of the brotherhood was instituted, and the benevolent purpose for which it was organized, may be defeated, and the burden of protecting and assisting the families and heirs of a deceased member of the brotherhood, will, under and by virtue of the mandatory provisions of sections 1 and 2, art. 8 of its constitution, again devolve upon the local lodge or division to which he belonged.

In view of the circumstances surrounding, and which led to, the incorporation of the association, we do not think that it can be successfully claimed that by the changes in the name and designation of beneficiaries in its charter and article 1 of its by-laws, the association intended to work such a radical change in the scheme originally projected; and, as we have seen, defeat the paramount object for which it was created. To justify such a conclusion, the language used must be susceptible of no other reasonable construction. As was said in *Ballou v. Gile*, 50 Wis. 614:

"In determining who is entitled to receive the benefits of the provisions made by a society of this kind, it is the duty of the court to construe its rules and regulations liberally to effect the benevolent purposes of the order, and in no case so to construe them as to defeat such purpose, unless the mean-

ing of such rules and regulations is so clear and certain as to admit of no other reasonable construction."

It appears from the record that the incorporation of the association was not a voluntary act on the part of the brotherhood, but was had in order to comply with section 3630 of the insurance law of the state of Ohio, where it maintained its principal office, which as amended in 1891, reads as follows:

" A company or association may be organized to transact the business of life or accident, or life and accident, insurance on the assessment plan, for the purpose of mutual protection and relief of its members, and for the payment of stipulated sums of money to the families, heirs, executors, administrators or assigns of the deceased members of such company or association, as the members may direct, in such manner as may be provided in the by-laws. * * * "

This appears from an abstract from the official journal of the Brotherhood of Locomotive Engineers admitted in evidence under stipulation by counsel, and is as follows:

" In order that the insurance association of the B. of L. E. may continue as an organization, and its officers comply with the insurance laws of the several states affecting beneficiary orders, we were compelled, during the past month, to apply to the commissioner of insurance for the state of Ohio for incorporation. In this we have been successful, as the prayer submitted was granted, and the old L. E. M. L. I. Association, with its spotless record, is a matter of history, and upon its broad fraternal past there arises the Locomotive Engineers' Mutual Life & Accident Insurance Association, whose future we hope may be as auspicious in solidifying the interests of its members, as has been that of the one necessity compels us to lay aside."

Actuated by these considerations, and not because of any dissatisfaction with the old association, or with its limited class of beneficiaries, the officers of the brotherhood incorporated the association as above stated, setting forth in the articles of incorporation the purposes and objects of the association in the language of the statute under which it was

organized; and for its regulation re-adopted substantially the old by-laws, with the references as to beneficiaries unchanged; and continued to issue the same form of policy, and specified that "all payments of benefits that may accrue or become due to the heirs of members insured, by virtue of this policy, will be payable to ———— or his lawful heirs."

Considered in the light of these circumstances, it is evident that in changing the designation of the beneficiaries to conform with the provisions of the statute in this respect, the incorporators did not intend to remove all restriction as to the power of appointment, so as to enable a member to designate a stranger to the prejudice of those who had theretofore been the exclusive beneficiaries of the association; but at most indicates a purpose to extend the class of appointees so as to meet the contingency suggested by counsel for appellant; that is, "to enable an unmarried man, without family, whose parents are dead, to protect and care for himself while living, if injured, and provide a method in case of his death by which his executors, administrators or assigns may pay his debts, and preserve intact his good name and reputation."

In this view the changes are consistent with the recognized objects of the association; and while enlarging the class of recipients, they still confine the insurance benefits to the benevolent purposes for which it was organized.

It is unnecessary to determine whether, by virtue of the provision of the statute, a member may designate as his beneficiary, such of the enumerated persons as he may choose, as that question is not presented in this case. And, however that may be, it is well settled that he cannot appoint one not within some of the specified classes. *American Legion of Honor v. Perry*, 140 Mass. 580; *Northwestern Masonic Aid Assn. of Chicago v. Jones*, 154 Pa. St. 99; *Hannigan v. Ingraham*, 55 Hun, 257; *Hanna v. Hanna*, 30 S. W. Rep. 820; *Caudell v. Woodward*, 96 Ky. 646; Bacon on Ben. Societies, § 244 and cases cited.

It follows, therefore, that as the appellant comes within neither of the classes enumerated in the charter of this asso-

ciation, the designation of her as a beneficiary was nugatory, and ineffectual to nullify the former designation of the appellee; and our conclusion is that both as the designated beneficiary and the sole surviving heir at law of deceased, the appellee is entitled to the fund in controversy.

The judgment of the district court is accordingly affirmed.

*Affirmed.*