[No. 4086.]

## PITTINGER v. PITTINGER.

1. LIFE INSURANCE—HUSBAND AND WIFE—PRESUMPTION—BURDEN OF PROOF.

Where a certificate of life insurance designates the beneficiary as the wife of the assured, she is presumed to be a legal wife, and the burden of proof rests with one disputing such relationship to establish by a preponderance of evidence that she is not his legal wife.

2. HUSBAND AND WIFE—PRESUMPTION OF LEGALITY OF MARRIAGE—EVIDENCE.

Where a regular marriage ceremony is shown to have been solemnized the presumption of its legality is not overcome by proof of the existence of a former marriage of the husband and the testimony of the former wife that she had taken no steps herself to procure a divorce and that no process had been served on her in any divorce proceedings instituted by her husband, where the second marriage took place in Colorado six years after the husband had left his former wife for cause in Pennsylvania and where the evidence shows that before the second marriage of the husband, the former wife had re-married or gone through the form of a marriage ceremony with another man.

3. SAME—HARMLESS ERROR.

Where the evidence is insufficient to overcome the preusmption of legality of the second marriage of a deceased husband, the admission of testimony of the second wife that her husband had told her he had been divorced from his former wife, if erroneous, was not prejudicial.

4. LIFE INSURANCE—CHANGE OF BENEFICIARY—CHANGE OF BY-LAWS OF ASSOCIATION AFTER ISSUANCE OF POLICY.

Where policies of life insurance were issued by a mutual association on the life of a husband for the benefit of his wife and were delivered to her and the policies contained no provision permitting a change of beneficiary at the will of the assured, and at the time they were issued and delivered the by-laws of the association made no provision for such change, the policies vested in the wife an irrevocable interest of which she could not be divested without her consent, and a subsequent by-law of the association authorizing a change of beneficiaries at the will of the assured could not affect her vested interest in the policies so as to authorize the assured to change the beneficiary without her consent.

5. STATUTORY CONSTRUCTION—RETROSPECTIVE—BY-LAWS.

The rule of statutory construction, that a statute will not be con-

strued to have a retrospective effect unless it is clear that it was in-
tended to have such effect, is applicable to the by-laws of a mutual
insurance association, and where a by-law of such association author-
izing the change of beneficiaries in policies at the will of the assured
has nothing in it to indicate that it was intended to affect policies
theretofore issued, it will be presumed that it was not intended to
affect such policies.

*Appeal from the District Court of Arapahoe County.*

The subject matter of controversy is the right to the pro-
ceeds of two policies of insurance upon the life of one John
Pittinger, deceased, which the association issuing them paid
into the registry of the trial court, leaving the parties to this
action to litigate the question as to which is entitled to such
fund.  Appellant claims this fund as the legal beneficiary
and as the neice, and appellee as the legal beneficiary and as
the widow of deceased.  The deceased was married in Penn-
sylvania, in 1876, to one Emma Koser; they separated in
1879.  He appears to have entertained suspicions regarding
her conduct, which, if based upon facts, justified his act in
leaving her.  They never lived together afterwards, or com-
municated with each other.  Deceased shortly afterwards
came to Colorado, and in 1885, married appellee.  They lived
together as husband and wife until the spring of 1898, when
separation took place.  Reconciliation was effected a few
months later.  After his marriage to appellee, and in 1885,
he insured his life for her benefit in the Locomotive Engi-
neers' Mutual Life and Accident Association.  He delivered
this policy to her.  In 1894, for reasons which are immater-
ial, it was surrendered and two issued in favor of appellee,
which were also delivered to her.  May 23, 1898, he returned
these certificates of insurance to the association, and had
new ones issued in favor of appellant.  This was without the
knowledge or consent of appellee.  After the reconciliation
between appellee and himself, he informed her of his act,
and promised to return the certificates and have them re-is-

sued in her favor.    Shortly afterwards he met his death
without having made the change.    At the time of the issue
of the policies in favor of appellee, there was no provision in
the charter or by-laws of the association permitting a change
in beneficiaries without the consent of the latter, nor did
such policies contain such a provision.    In May, 1896, such
a by-law was adopted.

It appears that his first wife re-married, or went through
the form of a marriage ceremony, in 1883, with one Harper,
without ever having obtained a divorce, and thereafter lived
with him as his wife.    She testifies that deceased never ob-
tained one from her and that no papers for that purpose were
ever served upon her.    Other witnesses on behalf of appel-
lant testified to the marriage relation between herself and de-
ceased, and state that to their knowledge no divorce was ever
obtained.    Over the objection of appellant appellee testified
that deceased had stated to her that he had been married,
but was divorced from his former wife, and supposed her
dead.    Letters were also permitted to be introduced upon
her part from deceased, in which he addressed and wrote to
her as his wife.    The judgment of the lower court was ad-
verse to appellant, and she brings the case here for review.

Messrs. TALBOT, DENISON & WADLEY for appellant.

Messrs. PATTERSON, RICHARDSON & HAWKINS for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court.

By the record in this case two propositions are presented
for determination, upon which the right of the parties
depend:

1.    Does the evidence establish that appellee was not the
wife of deceased?    If this is answered in the negative, then,

2.    Were her rights divested by the surrender of the cer-

tificates and the issuance of new ones, naming appellant as beneficiary?

Appellee having been named as the beneficiary in the original certificates, and designated therein as the wife of deceased, she is presumed to be a legal one, and bear the relation to the insured designated—*Knights of Honor v. Davis*, 26 Colo. 252; so that to the extent that the rights of appellant are dependent upon the fact that appellee was not the wife of deceased, the burden of proof rested with her to establish this issue by a preponderance of the evidence. On this subject the first wife testifies to the effect that she was married to deceased in 1876. She took no steps herself to obtain a divorce, and states that no papers for that purpose were ever served upon her. This is the only testimony tending to establish that the marriage relation between herself and deceased was not dissolved, as the evidence of the other witnesses on behalf of appellant on this subject is immaterial. As against this testimony we have the undisputed evidence to the fact that a marriage ceremony was regularly solemnized between appellee and deceased, and the question squarely presented is, does the proof of the existence of the former marriage relation of deceased and the testimony of the former wife, establish that the marriage of appellee was invalid? No man is presumed to do an unlawful act. When a marriage has been shown, the law raises a strong presumption in favor of its legality. By some of the authorities this presumption is said to be one of the strongest known to the law. Its strength increases with the lapse of time. This presumption arises because the law presumes morality and not immorality, and that every intendment is in favor of matrimony. *Lampkin v. Ins. Co.*, 11 Colo. App. 249; 2 Nelson Divorce and Separation, § 580; *Boulden v. McIntire*, 21 N. E. Rep. 445; *In re Rash's Estate*, 53 Pac. Rep. 312; *Teter v. Teter*, 101 Ind. 129; *Johnson v. Johnson*, 114 Ill. 611.

This presumption applies with peculiar force in favor of

one who is unable to prove affirmatively that the man with whom she entered into the marriage relation in good faith was divorced from a former wife. Appellee was not acquainted with deceased until she met him in Colorado, and except for the presumption in favor of her innocence, there would be imposed upon her an unreasonable burden if she is required to show that prior to her contracting marriage with the assured, he had been divorced, It is contended on behalf of appellant that the marriage of deceased to his first wife having been shown, that this is sufficient to overcome the presumption in favor of the legality of the marriage between deceased and appellee. While it is true that it is a presumption of law that a fact continuous in its nature, such as marriage, coutinues after its existence is once shown, yet this presumption is not sufficient in all cases to overthrow the presumption of law in favor of innocence. *Klein v. Laudman*, 29 Mo. 259. In other words—under the facts of this case the presumption of the continuance of the first marriage, based upon the naked fact that it was solemnized, is not equal in probative force to the presumption in favor of the legality of appellee's marriage,—*Erwin v. English*, 23 At. Rep. 753; so that the remaining question on this subject is, was the evidence of the first wife, that no process in divorce proceedings instituted by deceased, had ever been served upon her, sufficient to overthrow the presumption in favor of appellee?

Six years elapsed between the time deceased left his first wife in Pennsylvania before he married appellee in Colorado It appears that when he separated from his wife in Pennsylvania, he believed her guilty of conduct of a character which would entitle him to a divorce. Certainly, since that time, according to her own statements, inconsistent as they are, she has been; and this, two years before he married appellee. It is not impossible that he might have instituted proceedings for a divorce and his first wife not have received a copy

of the summons, even though mailed to her. In cases of this character, no inflexible rule can be laid down, which would be an infallible test by which to determine whether a marriage has been dissolved or not. Each one must be determined upon its own facts and circumstances, and such inferences as should fairly and reasonably be drawn from them. *Williams v. Williams*, 63 Wis. 58; *Reynolds v. State*, 78 N. W. Rep. 483. In this instance appellee is free from wrong. If she is deprived of any rights, it results from no wrongful acts of hers, but from the misconduct of another. The rights of the first wife are not involved in this proceeding. Appellant has no claim upon the bounty of the deceased, and in so far as her rights are dependent upon the fact that he has been guilty of a violation of the laws of the land, the principles of natural justice require that the evidence to that effect should be sufficiently convincing to admit of no other reasonable hypothesis. In such circumstances appellee is entitled to a broad application of the rule that "the law presumes morality, and not immorality; marriage, and not concubinage." *Teter v. Teter, supra.* Considering the strong presumption which the law raises in favor of the innocence of appellee and the validity of her marriage with deceased, in connection with the lapse of time between the date when he separated from his wife in Pennsylvania and married appellee in this state, coupled with the further facts that he left his first wife with the intention of never living with her again, for good and sufficient reasons; that she was either guilty of conduct thereafter which should entitle him to a divorce or she is telling an untruth about one not having been obtained, and that legal divorce proceedings might have been instituted and terminated in his favor without process being received by her, we are of the opinion that this testimony is insufficient to establish that deceased was not divorced from his first wife at the time he contracted marriage with appellee. As this conclusion is fairly deducible without considering

the testimony introduced on behalf of appellee relative to what deceased told her regarding his former marriage and its dissolution. it follows that the reception of this evidence, even if error, was not prejudicial, because it could not affect the result. The policies of insurance were originally issued and delivered to appellee. They contained no provision permitting a change of beneficiary at the will of the assured. At this time the articles and by-laws of the association were silent with respect to the power of the insured to change the beneficiary at pleasure. Leaving out of consideration for the present the by-law of 1896, appellee, therefore, took a vested and irrevocable interest in such policies which could not be divested without her consent. On this proposition the authorities are not entirely harmonious, but the law on the subject in this jurisdiction has been expressly declared as above stated in the case of *Love v. Clune*, 24 Colo. 237. Since that decision was announced, the same conclusion has been reached by the court of chancery of New Jersey, in construing a policy of the association issuing the policies in this case, and *Love v Clune, supra*, cited with approval—*Locomotive E. M. L. & S. Asso. v. Winterstein*, 44 At. Rep. 199. The change of beneficiary in this instance being without the consent of appellee, it did not operate to divest her of her interest therein unless the by-law of the association, passed in May, 1896, empowering the insured to change beneficiaries without the consent of the latter, affects the rights of appellee. Prior to the passage of this by-law, no provision of the articles of the association was in existence which would authorize a change of beneficiaries at the will of the insured, or which empowered the association to adopt any amendment to this effect which would operate upon policies theretofore issued. Neither does it appear from the policy of insurance that any such right was reserved by the insured. Under such state of facts, it must necessarily follow that appellee having acquired a vested interest in the policies

which could not be divested without her consent, the subsequent action of the association in enacting a by-law which provided to the contrary could not affect her rights. Further than this, laws will not be construed as retrospective in their operation unless it is clear that they were intended to be so. This rule for the interpretation of statutes has frequently been applied in construing the by-laws of associations of a character similar to the one issuing the policies in this case. *Wist v. Grand Lodge A. O. U. W.*, 29 Pac. Rep. 610; *Benton v. Brotherhood of R. R. B.*, 34 N. E. Rep. 939; *Roxbury Lodge v. Hocking*, 38 At. Rep. 693.

There is nothing in the by-laws in question which would indicate that it was the intention of the association that it should affect policies theretofore issued. The judgment of the district court is affirmed.

*Affirmed.*