[No. 6954.]

## FINNELL ET AL v. FRANKLIN, Executor.

1. LIFE INSURANCE—*Benefit Societies—Contract with Member*— The contract of a fraternal benevolent society with its member, embodies, by necessary implication, the application for membership, the certificate of insurance, the charter and by-laws of the society, and the statutes of the state under which the society is organized.

2. ——*Right of Assured*—The assured has no interest in the insurance money. Even though he is the sole heir of the beneficiary, and survives him, the insurance money is no part of his estate. A power reserved to him to change the beneficiary is a mere naked power, to be exercised in conformity with the statutes of the state in which the society was organized, and under which the certificate was issued.

3. ——*Right of the Beneficiary*—Where a power to change the beneficiary is not reserved, the one named in the certificate acquires a vested interest in the insurance, immediately upon the delivery of the certificate. With such power reserved, the beneficiary takes a mere expectancy.

4. ——*Change of Beneficiary*—The assured in a fraternal or mutual insurance association has no greater power to change the beneficiary in the policy than has the assured in an ordinary life policy, save as may be reserved to him by the certificate of insurance, in conformity with the statute of the state under which the society was organized. Where there is a conflict between the policy, and by-laws of the association on the one hand, and the charter, or the statutes controlling, on the other, the former must yield.

The certificate of the member obligated the association to pay a specified sum to "W. S. F. or his lawful heirs" upon the death of the member, subject to the right of the member to substitute any other person within certain classes designated by the statute. *Held* that even though the assured survived the beneficiary, and was his sole heir, he had no power to designate by will, to receive the insurance, persons not of the classes prescribed by the statute, when there were, in being, persons of those classes, and that such attempted designation was without effect.

5. ——*No Beneficiary Designated—Right of Action*—The certificate named as the beneficiary "W. S. F. or his lawful heirs." The assured survived the beneficiary and made no effectual designation of any qualified person to succeed such beneficiary. *Held* that those who would have been the lawful heirs of W. S. F., had he survived the assured, and who were of the class designated by the statute, as competent to take, were entitled to the fund.

6. PAYMENT INTO COURT—*Effect*—A benefit society does not, by payment into court of insurance money which is in dispute, waive the provisions of the statute under which the insurance was written. The deposit is no more than a request to the court to award the funds as equity and the law directs.

*Error to Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

Mr. THOMAS M. MORROW, for plaintiffs in error.

Mr. L. M. GODDARD, Mr. HARRY B. TEDROW, Mr. HUGH McLEAN, for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

This action involves the disposition of a sum of money paid into court by the Locomotive Engineers Mutual Life and Accident Insurance Association, being the proceeds of two policies of insurance issued by it upon the life of one John O. Finnell.

The record discloses that in 1894 the association was incorporated under the laws of the state of Ohio, not for profit, but for the purpose, as stated in its charter, following the language of the statute, "to transact the business of life and accident insurance on the assessment plan, for the purpose of mutual protection and relief of its members, and for the payment of stipulated sums of money to the families, heirs, executors, administrators or assigns of deceased members of said association."

In 1896 the general assembly of Ohio enacted a statute known as "House Bill No. 370," entitled, "An Act Regulating Fraternal Beneficiary Societies, Orders and Associations." By the terms of this statute any corporation, society or voluntary association, without capital stock, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work, and representative form of government, and which shall make provision for the payment of death

benefits, is declared to be a fraternal beneficiary association to be governed by that act, and limited in the payment of death benefits "to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the members." The act authorized associations of the character of those defined therein to continue their business, provided they complied with the provisions of the act. Thereafter, on September 24, 1896, the board of directors of the Locomotive Engineers Mutual Life and Accident Insurance Association passed and adopted a resolution bringing the association under the provisions of the act, and applied for and was granted, by the proper authorities, a license to transact its business thereunder. It has since continued to operate under the provisions of that statute, and of amendatory legislation, and has been treated at all times by the insurance department of the state of Ohio as classified properly and exclusively thereunder, and comes clearly within the description of those corporations and societies which the act classifies as fraternal beneficial associations. The policies upon the life of Finnell were taken out long subsequent to the Act of 1896. The language designating the beneficiary in each policy is as follows: "All payments or benefits that may accrue or become due to the heirs of the person insured by virtue of this policy will be payable to W. S. Finnell, father, or his lawful heirs." W. S. Finnell predeceased John O. Finnell, leaving the latter as his sole heir at law. John O. Finnell died July 17, 1905, leaving, of the required class of beneficiaries prescribed by the statute, only an uncle and some cousins, who are the plaintiffs in error herein, and who would have been the lawful heirs of W. S. Finnell had he outlived John O. Finnell. At the date the policies were issued article 1 of the by-laws of the association defined its purposes in the language of the original charter, nothwithstanding the limitations imposed by the act of 1896, *supra,* whereby

executors, administrators and assigns were eliminated from the class of persons that might be named beneficiaries in insurance policies issued by the association. In May, 1904, this by-law was amended so as to conform to the provisions of a later statute substantially the same in that regard, however, as the act of 1896, *supra*. The sections of the by-laws defining the manner of changing beneficiaries, in force at the date the policies were issued, continued and remained the same until after the death of John O. Finnell. They are as follows:

"Sec. 23. A policy holder of this association having designated his beneficiary or beneficiaries, may change the same at his pleasure, without notice to or consent of the beneficiary or beneficiaries, by returning through the division secretary of the division to which he belongs, former certificate issued, to the Home Office, and informing the President and General Secretary-Treasurer of changes desired; provided, however, that the new beneficiaries shall come within the class named in article 1, for which a fee of twenty-five (25) cents will be charged. Any person or persons named as beneficiary or beneficiaries, accepting any interest in a policy or certificate issued by this association, do so upon the express terms or conditions contained in this article."

"Sec. 24. Any member wishing to change beneficiary in his policy or policies can do so by returning through the division secretary of the division to which he belongs, the policy or policies in his possession. Being unable to return old policy or policies, new ones will be granted by members making affidavit of the facts on a form supplied by the Home Office, executed before an officer authorized by law to administer oaths, and waiving all benefits in former policy or policies held by him."

John O. Finnell left a will which was duly probated on August 31, 1905. After making certain specific bequests he therein particularly mentioned the insurance

policies in question, and directed his executor, Charles W. Franklin, the defendant in error herein, to collect and hold the proceeds, together with the remainder of his estate, in trust, and pay the same to certain persons therein designated, none of whom, however, with one exception, belong to the class that may be made beneficiaries under the terms of the statute of 1896, *supra,* and the charter of the association as amended thereby. To this person he directed that $500. be paid, but from no particular fund.

While it is conceded that no attempt was made in the manner and form prescribed by the by-laws to change the beneficiary designated in the policies, it is contended that the will constituted a change in that respect. We do not think so. It is true that the purposes and objects of fraternal or mutual insurance associations are vastly different from those of ordinary life insurance companies. Nevertheless, the assured, under the rule in this jurisdiction, has no greater power to change the beneficiaries in one case than in the other, except as reserved to him by the law of the state under which the insurance was written, or by that of the association, or by the terms of the policy or certificate of insurance.—*Love v. Clune,* 24 Colo., 237, 50 Pac. 34; *Pittinger v. Pittinger,* 28 Colo., 308, 64 Pac. 195, 89 Am. St. 193; *Hill v. Groesbeck,* 29 Colo., 161, 67 Pac. 167.

In either case the terms of the contract of insurance govern. The contract, however, is not limited in all cases to the express provisions contained in the insurance certificate or policy. Uusally that entered into between a benefit association and a member thereof embodies, by necessary implication, the application for membership, the certificate of insurance, the charter and by-laws of the association, and the statutes of the state under which it is organized and the insurance is written. All these become a part of the contract to the same effect as if they

had been expressly embodied therein by written words. *Golden Star Fra. v. Martin,* 59 N. J. L. 207, 35 Atl. 908; *Maryland Mutual Benev. Soc. etc. v. Clendinen,* 44 Md. 429, 72 Am. R. 52; *Arthur v. Odd Fell. etc.,* 29 Ohio St. 557; *Hellenberg v. Dist. No. 1, etc.,* 94 N. Y. 580.

And if there be a conflict between the .stipulations in the policy and by-laws of the association issuing the same, on the one hand, and the charter of the association and the statutory law regulating such associations, on the other, the former must yield to the latter.—*Havens v. Fire Ins. Co.,* 123 Mo. 403, 417, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. 570; *Sturges v. Sturges,* 126 Ky. 80, 102 S. W. 884, 112 L. R. A. (N. S.) 1014.

At the time Finnell became a member of the association and the policies in question were written, the charter of the association and the rights of the parties must be determined as affected by the act of 1896, *supra,* notwithstanding the by-laws of the association. That act and the action of the association thereunder constituted an amendment of the original charter of the association. Therefore, policy contracts, entered into between it and its members after that event, must be conformed to that act. *Sturges v. Sturges, supra,* so rules in considering the original charter of this association and the effect of this legislative act thereon.

Guided by these rules let us ascertain the terms of the insurance contracts in question existing on the life of John O. Finnell at the time of his death. The association obligated itself to pay the sums designated to W. S. Finnell, or his lawful heirs, upon the death of John O. Finnell, subject, however, to the right of the latter, in a certain designated way, to have substituted in the contracts, the name of a person or persons other than W. S. Finnell or his lawful heirs, to whom such payments should be made, provided however, that the person or persons so designated should sustain a cer-

tain relation to the assured, that is, be a member of his family, an heir, a blood relative, affianced wife, affianced husband or a dependent.

It is certain that John O. Finnell had, under these contracts, no interest or property in the benefits therein named, but simply the power to appoint some one to receive them. *Rollins v. McHatton,* 16 Colo. 203, 27 Pac. 254, 25 Am. St. 260. If the power of designation had not been reserved, the beneficiaries first mentioned would have acquired a vested interest upon delivery of the policies, but with the power reserved they took a mere expectancy. *Love v. Clune, supra.* Under these circumstances, the right of substitution of other persons to receive the benefits is essentially a naked power, and, to be available, must be executed according to the terms of the contract.—*Maryland Mutual Benev. Soc. etc. v. Clendinen, supra; Hellenberg v. Dist. No. 1, etc., supra.*

Were the contracts silent as to the manner of changing the beneficiary designated therein, it might be immaterial as to how that was done, but here it is specified and compliance with the procedure prescribed is essential to the substitution or change. In other words, the right reserved in the assured was not absolute but qualified. This principle is announced and applied in *Rollins v. McHatton, supra,* where, in considering a contract of quite similar import and in answer to a similar contention to that here made, it is said:

"We discover that other persons than the one originally named can receive the bequest only upon direction of the assured 'by change of beneficiary entered upon the record of the supreme secretary.   *   *   *,' This provision thus plainly declares how another person may be substituted in place of the one first designated. The language used is too plain to be misunderstood, and we are not at liberty to supply new words or to ignore the clear import of those employed by the con-

tracting parties. The intent to permit a change of bene-
ficiary at the will of the assured is no more plainly de-
clared by the preceding clause than is the manner of
executing that intent by the expression under considera-
tion. The resolution to substitute can be enforced in
but one way, viz., 'by change of beneficiary entered
upon the record,' etc. It will not do to say that the en-
try upon the record is directory merely, or that it is of
no special importance. This entry is an essential part
of the substitution, and the change is incomplete until
it is made," citing the following authorities:—*Bacon's*
*Benefit Societies, etc,,* § 307; *Holland v. Taylor,* 111 Ind.
121, 12 N. E. 116; *Daniels v. Pratt,* 143 Mass. 216, 10
N. E. 166; *Natl. Mut. Aid Society v. Lupold,* 101 Pa. St.
111; *Stephenson v. Stephenson,* 64 Iowa, 534, 21 N. W.
19; *Coleman v. Knights of Honor,* 18 Mo. App. 189;
*Kentucky M. M. L. Ins. Co. v. Miller, Adm.,* 13 Bush
489; *Eastman v. Provident etc. Assn.,* 62 N. H. 555; *Hel-
lenberg v. Dist. No. 1, etc.,* 94 N. Y. 580.

In *Charch v. Charch,* 57 Ohio St. 561, 578, 49 N. E.
412, it is said: "When the by-laws provide, as those of
these two orders do, a method by which the beneficiary
may be changed, that method must be pursued; and,
where no change is thus made, the company's promise
to pay runs only to the person named in the certificate."

*Splawn v. Chew,* 60 Tex. 532, is relied upon by de-
fendant in error in support of his contention that the
prescribed manner of changing the beneficiary is only
directory, and a substitution may be made by will. If
it can properly be said that the case so holds, it is in
conflict with the decisions of this court and contrary to
the great weight of authority. In § 222a, Niblack's
Benefit Societies and Accident Insurance, it is said that
*Splawn v. Chew, supra,* is the sole exception to the
holding that a change of beneficiary "to be effectual,
must be made in compliance with the terms of the cer-

tificate, or by-laws of the society." And the author of the same work, in § 222 says: "* * * the member and the society may during the life of the member waive these requirements, and may agree upon a new beneficiary of the contract in any manner satisfactory to both parties. It does not follow, however, that after the death of a member, the society may waive these requirements and recognize as valid an attempted change of beneficiaries made by the member in a manner different from that set forth in the contract. The rights of the parties are controlled by the contract as it was at the date of the death of the member, and, after these rights have attached by the death of the member, no consent, or act of the society can defeat or even affect them. * * * The payment of the fund into court for the benefit of the person who may be declared to be entitled to it, in no way improves or prejudices the legal position of either the original or the substituted beneficiary."

Nor are we able to approve the contention of defendant in error, apparently adopted by the trial court, that the will constituted, in equity, a change of the beneficiary designated in the policy. While equity may aid an attempted but incompleted change in that respect, it does so only when the "assured has done his part towards perfecting the substitution in accordance with the method prescribed, but owing to circumstances over which he has no control the change is not entirely consummated at the time of his death, * * *. But it is an essential prerequisite to the interposition of equity that the assured has in good faith attempted to comply with the prescribed mode of substitution." *Rollins v. McHatton, supra.* In this case the assured did nothing to perfect a substitution in accordance with the modes prescribed, although he had full control over all the circumstances essential to that end. Such provisions were

for the mutual benefit of the association and its members and the deposit of the money with the court in no sense constituted a waiver thereof. *Rollins v. McHatton, supra.* The only substantial effect of that act, under the circumstances of this case, was to request the court to award the fund as equity and the law might direct under the terms of the contracts of insurance.

This is the rule suggested in *Rollins v. McHatton, supra,* where, after declaring that the insured member of such societies has, himself, no interest in the fund, but possesses simply a power of appointment which, if not exercised, becomes inoperative, we said: "It would seem to follow that the insurance money could not in any event become assets of the insured's estate." This view is strengthened by the provisions of the statute under which the association was organized and the policies were issued. Section 8 thereof expressly declares that such funds shall not be liable to attachment, garnishment or other process and shall not be seized, taken, appropriated, or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of a certificate holder, or of any beneficiary named in a certificate or any person having any rights thereunder. Moreover, the fund was created and brought into existence for the sole use and benefit of that class designated in the statutes of the state where the association was incorporated, and can not be lawfully diverted therefrom.—*Love v. Clune, supra; Bacon Ben. Soc. etc.,* §§168, 244; *Warner v. Mod. Wood. of Amer.,* 67 Neb. 233, 93 N. W. 397, 61 L. R. A. 603, 108 Am. St. 634, 2 Ann Cas. 650; *Sturges v. Sturges, supra.*

If the assured, during his lifetime, had attempted to change the beneficiary so as to include either his estate, the executor or administrator thereof, his creditors or a person not coming within the statutory prescribed class of beneficiaries, the designation in that re-

spect would have been nugatory, and would have conferred no rights whatever upon such person or persons. —*Love v. Clune, supra; Warner v. Mod. Wood. of America, supra; Knights of Honor v. Nairn,* 60 Mich. 44, 26 N. W. 826; *Bacon Ben. Soc. etc.,* §§ 244, 244a; *Sturges v. Sturges, supra.*

In the latter case a policy of this association was under consideration, and it is said: ''While the insured had the right to change the beneficiary, the one substituted must of necessity have belonged to the class permitted by the statute, else the attempted change would be void. It was not competent, then, for the insured to have designated his estate as the beneficiary of the policies.''

And in the same case quoting from *Van Bibber v. Van Bibber,* 82 Ky. 350, it is said: ''The certificate of membership constitutes the contract; but it is to be construed and governed by the company's charter. In fact, it may be said that the charter is a part of the contract; and, if it declares who, in a certain event, shall be the beneficiary, the parties cannot alter this legislative direction, because neither the company nor the insured can do anything in violation of it.''

In *Daniels v. Pratt,* 143 Mass. 216, 221, 10 N. E. 166, the deceased was a member of a benefit association organized under the laws of that state, authorizing such organization to provide for a benefit for the family, widow, orphans, or other dependents of deceased members. He had designated as his beneficiary ''my estate.'' The court says: ''The designation by Dewey (the assured) that his money should go to his estate, was invalid. If it were a part of his estate, it would be assets for the payment of debts and expenses of administration, and would be subject to an unrestricted disposition by will. But this is inconsistent with the statutes, and so beyond the power of the parties.''

And in *American Legion of Honor v. Perry*, 140 Mass. 580, 589, 5 N. E. 634, the same court said: "The statute under which the plaintiff corporation is organized gives it authority to provide for the widow, orphans, or other persons dependent upon deceased members, and further provides that such fund shall not be liable to attachment. The classes of persons to be benefitted is designated, and the corporation has no authority to create a fund for other persons than the classes named."

So, in the case at bar. If the assured in life could not, by positive act, confer the right to recover the amount named in the certificates, either upon his estate, the executor or administrator thereof, or his creditors, *because they did not come within the recognized class,* it is certain that his death could in no manner create such right. Nor is this rule affected, as claimed by defendant in error, by reason of the decease of the named beneficiary before the change, especially when, as here, there are claimants of the class for whom the association was authorized to raise the fund, and who might have been made beneficiaries under the statute.

However, were we to assume that the assured had the right to make a change of beneficiary in any other manner than prescribed in the contract, and that such change could be made by will, it is clearly apparent that there was no change or attempted change made in that respect. As to a policy held by deceased in the Brotherhood of Locomotive Firemen the will purports, by express words, to revoke the beneficiary therein named and to designate another. Not so, however, with the policies in question. They are described in the will by date, number, and the name of the association, after which the will recites that it is the desire of the testator "that all sums which may become due upon said policies, or either of them, or any other policy in force at

the time'' of his death, shall be collected by the defendant in error and distributed, together with the balance of his estate, as provided in his will. This cannot be construed as a revocation and substitution of beneficiaries or even an attempt to do so. On the contrary, it is clearly an attempt to deal with the prospective fund arising from these policies as though it were money or property in hand of which he was the then owner; but it was neither. *De Silve v. Supreme Council, etc.*, 109 Calif. 373, 376, 42 Pac. 32. As we have seen, this court has held, and it is the universal rule, that the insured member of benefit associations has, himself, no property interest in the fund. It, therefore, became, upon his death, no part of his estate. Having no interest therein he had no power to impress a trust thereon. *Warner v. Mod. Wood. of Amer., supra.* He had the right and power to provide a fund to be disposed of to the parties designated by the statute through the enacted power of designation. Beyond this he could not go in the control of the fund or its disposition. "If, therefore, the fund provided is not the property of the assured, and he has no property rights therein, he cannot deal with it as property and impress it with a trust for the payment of debts, as the impress of a trust upon the disposition of property necessarily presupposes a property right and interest upon which the trust may fasten; where that fails the whole is nugatory." *Bacon Ben. Soc. etc.*, § 244a.

But it is claimed that as the assured was the sole heir of the beneficiary first designated in the certificates, he became the designated beneficiary therein upon the death of the former and could dispose of the proceeds of the policies by will or otherwise. We do not think so. It would seem that the purpose and object of the association, the manner of accumulating the fund upon the death of a member by assessment, the character of

the contract including the certificates of insurance, preclude the idea that it was ever intended that the assured could, under any circumstances, become the beneficiary in a policy of this character. Moreover, the interest of the beneficiary in the fund was only an expectancy and could not vest until the death of the assured. If the insured himself was the sole beneficiary after the death of W. S. Finnell, when the former died there was no living beneficiary in whom the fund could vest. Designating the insured as the beneficiary in such policies would, therefore, seem, in legal effect, to constitute a failure to designate. It has been held that if a beneficiary and the assured die simultaneously, there is a lapse of designation and the benefit will go as in case of failure to designate under the laws of the society. *Bacon Ben. Soc. etc.,* §§ 243a, 289; *Paden v. Briscoe,* 81 Tex. 563, 17 S. W. 42.

Upon the theory that there was no designated beneficiary in existence at the time of the death of the assured, it is contended that there was a resulting trust of the fund in favor of his estate, and as a matter of equity the right to recover would be transferred to the executor of the will of the deceased, to be distributed under the provisions thereof. In the absence of limitations as to the class qualified to take the fund, it might pass to the estate of the assured. Especially would this be true if the association had surrendered its claim to the fund. Under such circumstances, equity would doubtless permit the fund to go where he whose acts brought it into existence, desired it should go, when that intention was ascertained in any way, or, in the absence of an expressed desire in that respect, permit it to become a part of his estate subject to administration, but that question is not involved and is not determined herein. In *Ryan v. Rothweiler,* 50 Ohio St. 395, 35 N. E. 679, relied upon by defendant in error, there was no

limitation upon the class for whom the fund was created, and upon failure of beneficiary the policy reverted to the assured, and upon his death the proceeds became a part of his estate subject to administration and bequest. Such also is the principle recognized and applied in *Bancroft v. Russell*, 157 Mass. 47, 31 N. E. 710, and in *Haskins v. Kendall*, 158 Mass. 224, 33 N. E. 495, 35 Am. St. 490, also relied upon by defendant. But here the corporation had power to raise a fund payable only to persons of the class named in the statute. The statute authorized the creation of the fund for the benefit of the classes therein named, and for none other.

It would seem, therefore, under the principles of equity, that, upon failure of designation, the fund should go to the class, or some one or more thereof, named in the statute and for whose benefit alone it could be legally accumulated. The facts of this case do not present the question as to the eligibility of a named beneficiary, or the right of one within the class to successfully object to the payment of the fund to a beneficiary without the class, and cases cited thereon are not in point. Here no designated beneficiary survived the assured and the sole question is, which of these contending parties has the better right to the fund?

Plaintiffs in error are the heirs of the assured and had the latter predeceased W. S. Finnell, would thereupon have sustained a like relation to him. They, therefore, come clearly within the class for whom the association was authorized to raise the fund by exactment from its members, and could have been made beneficiaries under the statute. The defendant in error is not within the class, and if permitted to take the fund will, following the wish of the assured as expressed in his will, divert it from the purposes and objects for which alone the law authorized it to be brought into existence. Besides, the members of the association were not, nor

could they legally be, assessed to provide a fund to be paid to others than of the class designated in the statute. Moreover, they did not subject themselves to assessment upon the assured's death to provide a fund for his creditors, his friends or those generally interested in his estate; but solely for his family, heirs, blood relatives, affianced wife or one dependent upon him. In *Rollins v. McHatton, supra,* after stating that the insurance money could not in any event become assets of the insured's estate, and that where the beneficiary named predeceased the insured, an heir of the former could inherit no part of the benefit by virtue of such relationship, we affirmed a decision of the trial court as eminently fair, apportioning the fund equally among those that might have been designated as beneciaries but were not.

But apart from this view, it would seem that plaintiffs in error have a legal right to this fund, and might have, even as against the association, personally or through the executor for their benefit, maintained a suit therefor. It has been held that a failure to designate, or a defective designation of a beneficiary, might be supplied by construction of the charter and by-laws of the association. It was so ruled in *Bishop v. G. L. E. O. etc.,* 112 N. Y. 627, 20 N. E. 562, where there had been no designation whatever. The objects and purposes of the corporation, which was a party to the contract, there under consideration, were quite similar to those of this association. There the fund was set aside to be paid over to the families, heirs or legal representatives of deceased or disabled members, or to such person or persons as the deceased might, while living, have directed. Here the statute expressly declares "payment of death benefits shall be to the families, heirs, blood relatives, affianced husband, affianced wife of, or to persons dependent upon the members," and such is the de-

clared object of the association in its charter and by-laws as fixed by the legislative act of 1896 *supra.* The by-laws provide that a member having designated his beneficiary may change the same to another of the class designated in the statute in a certain prescribed mode. Thus, as held in *Bishop v. G. L. E. O., etc., supra,* by the very terms of the act of incorporation, the charter of the company and its by-laws, the parties who are to receive the designated fund are the families, heirs, blood relatives, affianced husband, or affianced wife of, or person dependent upon the deceased member, or any of them, as the deceased member might while living have directed. It was held therein that, notwithstanding no direction was given as to which of the parties designated should take, the expression should be construed, and the matter should be determined, with reference to the general purpose of the corporation; and, so construed, it included those who would take such property as in cases of intestacy. And in *Masonic Mutual Relief Assn. v. McAuley,* 2 Mackey (13 D. C.) 70, after declaring that a fund created for the benefit of the widow, orphan, heir, assignee or legatee of a deceased member must go to some one of that class, and the death of the designated beneficiary had predeceased that of the assured, and the question was as to which of the class would take, it was held that, in the absence of any direction by the deceased, the order in which the parties were named in the charter and by-laws is the order in which they are entitled to the fund. Whether the former or the latter is the proper rule to apply to the facts of this case need not be determined herein. The assured left no family, which is the first class designated in the statute, and plaintiffs in error are the heirs, which is the second class designated therein. Moreover, under either rule the plaintiffs in error, to the exclusion of the defendant in error, would take the fund. The latter could

only receive the fund as a *quasi* trustee for the former. It is so expressly ruled in *Bishop v. G. L. E. O. etc., supra,* where it is said: "In deciding here that in the absence of the certificate the beneficiary fund would go to those who by the general laws of the state would take the money, we do not mean that the money would go as a part of the estate of the deceased, subject to the payment of his debts; but it would be a special fund, subject to the exemption provided for in the act of incorporation, and not to be liable for the payment of the debts of the decedent or to be taken on any process for the payment of such debts. We also think the plaintiff had sufficient interest in the fund to sustain this action in her capacity as administratrix (of the estate of the assured). It is true the fund does not come into her hands technically and strictly as assets of the estate of her intestate, nor is it to be liable for his debts. But the plaintiff, in her capacity as administratrix, represents both herself and those others who are entitled to receive the fund as its intended beneficiaries, for it comes to them by reason of the membership of the deceased, and the plaintiff is a *quasi* trustee for her children, and as administratrix represents them in this action."

And commenting upon *Daniels v. Pratt, supra,* Mr. Bacon in his work on Benefit Societies and Life Insurance, § 244 says: "The executor may be the proper party to sue to recover a benefit in case of the death in the life-time of the member of the beneficiary, but in such case the fund is not assets as held in the preceding case, but is a trust fund for the persons for whose benefit the society was formed." Plaintiffs in error are of the class of persons for whose benefit the association accumulating the fund in question was formed, while defendant in error is not. If the latter received it he would hold it in trust for the former. The fund is in

court and the parties entitled thereto are here claiming it. It should be awarded to them. The judgment of the trial court is, therefore, reversed, and the cause remanded with directions to enter an order in conformity with the views herein expressed.

*Judgment reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.